IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


**BRITTANY NETTLES,**                                         Case 1:14 CV 247

      Plaintiff,

      v.                                                         Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                                         MEMORANDUM OPINION AND ORDER


### INTRODUCTION

Plaintiff Brittany Nettles filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 1383(c). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C § 636(c) and Civil Rule 73. For the reasons stated below, the undersigned affirms the Commissioner's decision to deny benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed for SSI on May 27, 2011 alleging an onset date of August 31, 1989. (Tr. 135-41). Plaintiff applied for benefits due to bipolar II and high blood pressure. (Tr. 148). Her claim was denied initially and upon reconsideration. (Tr. 86-88, 96-98). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 60). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on September 5, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 16-25). The Appeals Council denied Plaintiff's

request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981.  Plaintiff filed the instant action on February 6, 2014. (Doc. 1).

## FACTUAL BACKGROUND

### Personal Background and Testimony

Plaintiff was born August 31, 1989 and was 21 years old at the time of her application. (Tr. 135). She had completed the eighth grade. (Tr. 149). Plaintiff has never worked; she said between jail time, felony convictions, and the need to care for her kids she was not able. (Tr. 48-49).

At different times in her life, Plaintiff lived with her cousin, friends, mother, and her ex-boyfriend. (Tr. 36, 164). At her cousin's house she performed light chores, although she did not like laundry or dishes, she was capable of both. (Tr. 40). Plaintiff said her only friends were within her family, mainly her mother, cousin, and sister, with whom she got along well. (Tr. 37, 41-42, 48). She had custody of her five year old and three month old children while her mother had custody of her third child. (Tr. 37-38). She said she cared for both children, took them to the park, talked with them, and made sure they ate. (Tr. 39-40). Plaintiff said she shopped about twice a month and was able to take the bus to get around. (Tr. 42, 167).

She said some days she did not get out of bed because of depression or side effects from the medication. (Tr. 164-65). However, even on those days she would get up to take care of her son including feeding, bathing, and taking her son to school. (Tr. 165). Plaintiff also reported having continual periods of no sleep and that she sometimes did not dress or bathe herself, although she always fed herself. (Tr. 165).  She said she could pay bills and count change but doing so irritated her. (Tr. 167-68). She would watch TV, talk with others, or play with her son.

2

(Tr. 168). Plaintiff claimed she had difficulty completing tasks, remembering instructions, and getting along with others. (Tr. 169).

Plaintiff testified she had no physical limitations that prevented her from working but said her weight caused some back problems. (Tr. 35-36). She had a history of marijuana use but had been clean for three years after undergoing treatment. (Tr. 44). She testified her biggest difficulty was getting along with others, but she did not get into fights. (Tr. 47). She stated she was able to get along with family, medical staff, and counselors. (Tr. 42). Overall, Plaintiff said she was compliant with her medication and that Abilify helped reduce her irritability. (Tr. 45-46). She said she occasionally saw and heard things that were not there, like her deceased father. (Tr. 52).

Plaintiff's mother said Plaintiff did not do much in a day, only watched TV and ate. (Tr. 175). Plaintiff's mother reported Plaintiff had no problem with personal care, such as dressing, bathing, and caring for her hair. (Tr. 175). Plaintiff did however need reminders to take her medication. (Tr. 176). Plaintiff had no hobbies and did not participate in social activities because she was irritable. (Tr. 177).

***Relevant Medical Evidence***

On May 13, 2011, Plaintiff was seen at Murtis Taylor for a psychiatric evaluation and stated she was angry, stressed, irritated, depressed and had hallucinations. (Tr. 214). On examination, Plaintiff was cooperative, irritable, had decent eye contact, linear and coherent thoughts, had a limited fund of knowledge, and dysthymic affect. (Tr. 216). Plaintiff was

assigned a GAF score of 45.[1] (Tr. 217). She was diagnosed with bipolar II and prescribed Abilify. (Tr. 217).

About a month later in June, 2011, Plaintiff reported continued irritation and sleepiness. (Tr. 219). It was noted she was cooperative, with decent eye contact, but had poor compliance with treatment. (Tr. 219). On July 1, 2011, Plaintiff was again seen at Murtis Taylor where she was cooperative and asked good questions. (Tr. 218).

Plaintiff continued to seek treatment at Murtis Taylor through October and November 2011 where she reported similar symptoms but said she had fewer mood swings and her family believed she was calmer. (Tr. 232-33).

On January 12, 2012, Plaintiff came to Murtis Taylor unannounced and was aggressive and uncooperative. (Tr. 231). Plaintiff reported she had been without her medication for about a week. (Tr. 231).  At this meeting, it was noted Plaintiff's judgment and insight were poor and she had missed several appointments. (Tr. 231).

On March 23, 2012, Rochelle Walzman, R.N., filled out an Adult Diagnostic Assessment of Plaintiff. (Tr. 234-50). Plaintiff told Ms. Walzman the "medication 'keeps me from rocking, kept me out of trouble.'" (Tr. 234). However, she reported the same symptoms of depression, anxiety, concentration, and problems with memory. (Tr. 238-39). Ms. Walzman observed Plaintiff was well groomed, had average demeanor, moderately aggressive, had no hallucinations, logical yet racing thoughts, euthymic mood, full affect, cooperative, moderately

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, sever obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). *Id.* at 34.

4

impulsive and restless, mild attention/concentration, and limited insight/judgment. (Tr. 248). She assigned Plaintiff a GAF score of 54.[2] (Tr. 241).

In April 2012, a qualified mental health specialist, Kamelah Ganaway, reported Plaintiff was "unpleasant and experienced difficulty comprehending." (Tr. 272). He said Plaintiff was unmotivated, frustrated, and annoyed. (Tr. 272). He also noted Plaintiff was talkative, yet difficult to understand. (Tr. 274).

In June 2012, Plaintiff underwent an initial psychiatric evaluation with Manuel Gordilla, M.D. at Connections, a behavioral health care provider. (Tr. 258). Plaintiff said she had irritability, mood swings, hyperactivity, impulsivity, hallucinations, delusions, and interrupted sleep. (Tr. 258). Dr. Gordilla observed Plaintiff was unkempt, with average eye contact, agitated activity, persecutory delusions, and had mildly concrete thought process in his mental status evaluation. (Tr. 259). Further, Plaintiff had a moderately irritable mood, full affect, mildly impaired attention/concentration, and low average intelligence. (Tr. 259). Dr. Gordilla assigned Plaintiff a GAF score of 39[3] and noted her highest reported GAF score in the past year was 45. (Tr. 260). Plaintiff reported the Abilify was helpful in keeping her under control. (Tr. 261).

In September 2012, Dr. Gordilla completed a check-box Medical Source Statement regarding Plaintiff's mental capacity. (Tr. 277). Dr. Gordilla opined Plaintiff would have poor to no ability to make occupational adjustments such as following rules, maintaining concentration,

---

2. A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*
3. A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing in school. *Id.*

dealing with the public, or interacting with supervisors. (Tr. 277). He further opined Plaintiff had poor to no intellectual functioning and would only be fair at making personal and social adjustments in the workplace. (Tr. 278). The only criteria to which Dr. Gordilla checked "good" was in Plaintiff's ability to leave home on her own. (Tr. 278).

***Consultative Examiner***

In September 2011, Plaintiff saw Edward Butler, M.D., for a consultative examination. (Tr. 221). At this time, she reported similar symptoms of irritability and anger yet she stated her medication had been "somewhat helpful". (Tr. 221). Plaintiff also said she had intermittent lower back pain and upper abdominal discomfort, which could be relieved by stretching and antacids respectively. (Tr. 221). Plaintiff said she cooked, cleaned, did laundry occasionally, shopped, showered, and dressed herself. (Tr. 222). Dr. Butler noted Plaintiff had normal gait, could walk on heels and toes, could perform a partial squat, had twenty degrees of flexion at the knees, used no assistive devices, and was able to rise from her chair without difficulty. (Tr. 223). Dr. Butler reported normal findings in all other areas of his examination, including range of motion, muscle testing, and mental status where he said Plaintiff maintained good eye contact, appeared oriented, and there was no evidence of impaired judgment or memory. (Tr. 223-24). Dr. Butler concluded Plaintiff had no physical restrictions. (Tr. 225).

***State Agency Psychologist***

On January 19, 2012, Karen Terry, Ph.D, evaluated Plaintiff's mental condition based on the evidence of record. (Tr. 79-82). Dr. Terry concluded Plaintiff had moderate restrictions in daily living, maintaining social functioning, maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 79). She opined Plaintiff would likely have some difficulties

with detailed or complex instructions but retained the ability to perform simple, routine tasks without performance requirements. (Tr. 81-82). She further concluded that while Plaintiff did have difficulties socializing she was capable of superficial interactions and would be best in a "relatively static" work setting. (Tr. 82).

*ALJ Decision*

In October 2012, the ALJ found Plaintiff had the severe impairments of affective disorder/bipolar disorder and substance addiction disorder; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 18-20). The ALJ then found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: she could only perform simple, routine tasks in a setting with no high production quotas or strict time requirements, no tasks that involve arbitration, negotiation, or confrontation, directing the work of others, or being responsible for the safety of others, and that involve only superficial interaction with co-workers and no contact with the public. (Tr. 21). Additionally, Plaintiff would be off-task up to five percent of the time. (Tr. 21).

Based on the VE testimony, the ALJ found Plaintiff could perform work as a warehouse worker, dishwasher, cleaner, dining attendant, or housekeeper; and thus was not disabled. (Tr. 24-25).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial

7

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

8

5.     Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ erred because he (1) failed to assign appropriate weight to the medical opinion of Dr. Gordilla; and (2) did not have substantial evidence to find Plaintiff's severe impairments did not meet or equal listing 12.04. (Doc. 16). Each argument will be addressed in turn.

***Treating Physician Rule***

Plaintiff argues the ALJ did not assign the appropriate weight to the medical opinion of "treating psychiatrist, Dr. Gordilla." (Doc. 16, at 1, 9). Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.902.  An ongoing treatment relationship will exist when "medical evidence establishes that [claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice…" § 404.1502.

9

If a treating source relationship is established, the opinion of such treating source is usually given deference because it is based on a "detailed, longitudinal picture of [a claimant's] medical impairment(s)". *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. In contrast, the opinions of non-treating sources are not given deference. § 416.927(d)(2); SSR 96-8p. Non-treating sources are physicians, psychologists, or other acceptable medical sources who have examined the claimant but do not have, or did not have, an ongoing treatment relationship with them. § 416.902.

The record does not establish Dr. Gordilla's opinion was that of a treating physician, and therefore it is not entitled to deference. In fact, the record shows Dr. Gordilla saw Plaintiff one time on June 1, 2011, and three months later he provided a check-box opinion regarding Plaintiff's ability to work. (Tr. 258, 277). Here, an ongoing treatment relationship does not exist because the evidence does not "establish[] that [claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice." § 404.1502. *See e.g., Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003); *Helm v Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 n.3 (6th Cir. 2011); *Yamin v. Comm'r of Soc. Sec.,* 67 F. App'x 883, 885 (6th Cir. 2003). The treating physician rule is intended to grant deference to those medical sources who have a detailed and complete picture of the Plaintiff's medical history; that rationale does not apply here.

However, Dr. Gordilla is a non-treating source under the regulations; and the ALJ must evaluate and weigh his medical opinion based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent

of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. Additionally, the regulations support medical opinions with thorough explanations that have considered all pertinent evidence. § 404.1527(c)(3). *See also White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 286 (6th Cir. 2009) (conclusory statements from physicians, without support from specific documents, is a valid reason for discounting an opinion).

The ALJ accorded Dr. Gordilla's opinion less weight based on its inconsistency and insupportability. (Tr. 23). First, Dr. Gordilla's opinion was internally inconsistent. *Rabbers*, 582 F.3d at 660. The ALJ noted the assessment that Plaintiff would have poor to no ability to socialize or complete a workday was not reflected in Dr. Gordilla's later findings that Plaintiff "ha[d] 'fair' ability to behave in an emotionally stable manner, relate[] predictably in social situations, and ha[d] 'good' ability to leave home on her own." (Tr. 23). Second, the opinion was not consistent with the record as a whole. *Id*. For example, the ALJ questioned whether a finding that Plaintiff has poor to no ability to use judgment or maintain concentration was consistent with her testimony that she is the care-giver for two children, a "task[] which certainly require[s] some degree of judgment, maintaining concentration and attention, response to changes, and functioning independently." (Tr. 23). Further, the ALJ noted that while Plaintiff has moderate limitations in social functioning, she got along with her mother, sister, children, cousin, counselors, medical staff, and other members of the public. (Tr. 23). Plaintiff's own testimony does not support Dr. Gordilla's restriction that Plaintiff has poor to no ability to interact socially. Even so, the ALJ took into account Plaintiff's subjective limitations regarding social interaction

when making his RFC by "limiting her to superficial interaction with co-workers and no contact with the public." (Tr. 23).

In sum, Dr. Gordilla saw Plaintiff on one occasion for an evaluation and the record does not show he ever treated Plaintiff. Furthermore, his conclusions, made on a check-box form with no documentary support, were both internally inconsistent and inconsistent with other record evidence. Thus, the ALJ did not err in evaluating the opinion's weight. *See Rabbers,* 582 F.3d at 660. The ALJ had substantial evidence to support the decision to assign Dr. Gordilla's opinion less weight based on its insupportable and inconsistent conclusions. 20 C.F.R. § 404.927(b), *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

### *Listing 12.04*

Plaintiff next argues the ALJ erred by not finding Plaintiff's mental disorder met or equaled Listing 12.04, Affective Disorders. (Doc. 16, at 12-14).

If a claimant meets or equals the requirements of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(d). If not, the sequential evaluation process continues and the ALJ must determine whether a claimant's impairment or combination of impairments is the "medical equivalence" of a listed impairment. *Id*. An impairment is equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). In order to determine whether a claimant's impairments are medically equivalent to a listing, the ALJ may consider all evidence in a claimant's record. 20 C.F.R. §§ 404.1526(c).

In order to establish disability due to a mental impairment on the basis of medical evidence, a claimant must satisfy one of the nine diagnostic categories for mental impairments

contained in 20 C.F.R., Part 404, Subpt. P, App. 1, § 12.00. *Abbott v. Sullivan*, 905 F. 2d 918, 923 (6th Cir. 1990). Most of the listings impose two requirements: first that the claimant has particular signs or symptoms; and second, the symptoms result in a specified degree of functional limitation. *Abbott*, 905 F. 2d at 923. The symptoms are found in paragraph A for each listing and, hence, are referred to as "paragraph A criteria". *Id*. The "set of impairment-related functional limitations" are contained in paragraph B of the listings and are referred to as "paragraph B criteria". App. 1, § 12.00. Here, Plaintiff asserts she satisfies the criteria of listing 12.04, specifically bipolar disorder. *See* App. 1, § 12.04.

There are additional functional criteria in paragraph C for listing impairment 12.04. App. 1, § 12.00. However, "paragraph C criteria" are assessed only if paragraph B criteria are not satisfied. *Id*. A claimant has a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied. *Id*. Plaintiff puts forth no argument that she was able to satisfy the "C" criteria of listing 12.04, therefore, the Court will not address those requirements.

Paragraph B criteria for listing 12.04 require that two of the following restrictions exist in order for disability to be found at this stage: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or, repeated episodes of decompensation, each of extended duration. 20 C.F.R., Part 404, Subpt. P, App. 1, § 12.04.

Here, after considering the paragraph B criteria,[4] the ALJ found Plaintiff had moderate restrictions in his activities of daily living; social functioning; and concentration, persistence, or

---

4. Neither party is contesting that Plaintiff met the paragraph A criteria.

13

pace. (Tr. 19-21). Finally, the ALJ found no evidence of decompensation. (Tr. 19-21). As a result, the ALJ determined Plaintiff failed to meet any of the paragraph B criteria. (Tr. 20-21).

Plaintiff claims the ALJ should have found marked limitations in social functioning. (Doc. 16, at 13). As support, Plaintiff suggests the ALJ did not account for the opinions of Plaintiff, Plaintiff's mother or the record evidence of her difficulties in interaction. Plaintiff notes her mother stated she would try to fight people and was uncooperative at her counseling sessions. (Doc. 16, at 14).

However, the record does not support these claims. Plaintiff herself stated she did not get into fights (Tr. 47) and the notes from her counseling sessions show she was generally cooperative (Tr. 42, 216, 219, 248). The record also shows Plaintiff was capable of social interaction for example, in the past she had lived with friends, a boyfriend, her mother, and her cousin; was capable of getting along with family, medical staff and counselors; went shopping; and took public transportation. (Tr. 36, 42, 164, 167). Included in the record were also Plaintiff's subjective complaints of being "irritable" and "unpleasant", but the ALJ accounted for these complaints in finding her moderately limited in social functioning. (Tr. 19). On their own, Plaintiff's subjective complaints of irritability and dislike of others are "not enough to establish the existence of a mental impairment". §§ 404.1528(a), 416.929(a). Thus, the ALJ had substantial evidence to support his finding that Plaintiff had moderate restrictions.

Next, Plaintiff claims she had marked limitations in concentration, persistence, or pace. (Doc. 16, at 14). Although the ALJ noted reports of "marginal attention/concentration and low average IQ", he also found medical support that Plaintiff was "fully oriented with linear and coherent thought stream". (Tr. 19, 217, 248, 259). Furthermore, the ALJ noted Plaintiff's custody

14

and care of her two young children suggested she was able maintain concentration for periods of time. (Tr. 19). Therefore, the ALJ's determination of moderate restrictions with respect to concentration, persistence, or pace is supported by substantial evidence in the record.

Even if substantial evidence could support the Plaintiff's view of the case, that fact is irrelevant. *Walters*, 127 F.3d at 532. The key inquiry on review is whether the ALJ's determination is supported by substantial evidence. *Id.* For the above stated reasons, the undersigned finds the ALJ's determination is supported by substantial evidence, as Plaintiff has failed to satisfy the paragraph B criteria of listing 12.04.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore affirms the Commissioner's decision.

s/James R. Knepp II
United States Magistrate Judge

15